OPINION *Page 2 
{¶ 1} Defendant-appellant Roland T. Davis appeals from the November 14, 2007 and January 14, 2008, Judgment Entries of the Licking County Court of Common Pleas overruling his Amended Petition for Post Conviction Relief [hereafter referred to as "PCR petition"] and granting the plaintiff-appellee State of Ohio's motion for summary judgment.
 STATEMENT OF FACTS IN THE CASE {¶ 2} This appeal stems from the murder of 86-year-old Elizabeth Sheeler by an intruder to her apartment. The intruder murdered Sheeler by stabbing her in the neck and chest. The intruder stole money from the apartment and fled the scene. The murder went unsolved for almost four years. In 2004, DNA testing identified defendant-appellant, Roland T. Davis, as the murderer of Sheeler.
 {¶ 3} Appellant was indicted on one count of aggravated murder while committing kidnapping, aggravated robbery, or aggravated burglary. Count one contained four death-penalty specifications: murder for the purpose of escaping detection, apprehension, trial, or punishment, R.C. 2929.04(A)(3); murder while committing, attempting to commit, or fleeing after committing kidnapping, R.C. 2929.04(A)(7); murder while committing, attempting to commit, or fleeing after committing aggravated robbery, R.C. 2929.04(A)(7); and murder while committing, attempting to commit, or fleeing after committing aggravated burglary, R.C. 2929.04(A)(7).
 {¶ 4} Appellant was indicted with four additional counts: Count 2 charged appellant with murder, Count 3 charged kidnapping, Count 4 charged aggravated robbery, and Count 5 charged aggravated burglary. The jury found him guilty of all *Page 3 
charges, and he was sentenced to death. For a complete statement of the underlying facts see State v. Davis, 116 Ohio St.3d 404, 880 N.E.2d 31,2008-Ohio-2.
 {¶ 5} On January 3, 2008, the Ohio Supreme Court upheld appellant's convictions and his death sentence after independently reviewing his sentence as required by R.C. 2929.05(A). State v. Davis, supra. Appellant filed a petition for certiorari with the United States Supreme Court which was denied on October 6, 2008. Davis v. Ohio (2008), _____ U.S. _____, 129 S.Ct. 137.
 {¶ 6} Appellant filed his post-conviction petition pursuant to R.C. 2953.21 on June 23, 2006. The State filed its Answer to appellant's post-conviction petition and a Motion for Summary Judgment. Appellant filed his Response to the State's Motion to Dismiss, and he requested a scheduling order that the State opposed. Appellant filed a Motion for Leave to Respond to the State's Motion for Summary Judgment, and the trial court granted appellant Leave to File a Response. On July 20, 2006, appellant filed a Motion for Leave to Amend Post-Conviction Petition, an Amended Post-Conviction Petition, a Motion for DNA Testing, a Motion for Discovery and Evidentiary Hearing, a Motion for Appropriation of Funds for Dr. Robert L. Smith, Clinical Psychologist, and a Reply Opposing the State's Motion for Summary Judgment. The State opposed all of those pleadings. On November 8, 2007 the State filed a Supplemental Motion for Summary Judgment that addressed appellant's Fifteenth and Sixteenth Grounds for Relief. On November 14, appellant mailed his Response to the State's Supplemental Motion for Summary Judgment; however, on that day, the trial court issued its findings of fact and conclusions of law. Appellant then filed a Motion for New Trial under Civ. R. 59(A). The trial court re-considered its decision in light of appellant's Response to the State's *Page 4 
Supplemental Motion for Summary Judgment and issued its final entry on January 14, 2008.
 {¶ 7} Appellant timely filed his notice of appeal and he is now before this Court on an appeal of right.
 {¶ 8} Appellant raises the following assignments of error for our consideration:
 {¶ 9} "I. APPELLANT'S RIGHT TO DUE PROCESS AND EQUAL PROTECTION WAS VIOLATED BECAUSE THE TRIAL COURT DISMISSED HIS POST-CONVICTION PETITION ON PROCEDURAL GROUNDS. U.S. CONST. AMEND. XIV; OHIO CONST. ART. I, §§ 2,16.
 {¶ 10} "II. APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS WERE VIOLATED BECAUSE THE TRIAL COURT DENIED MOTIONS THAT WERE NECESSARY TO FULLY AND FAIRLY LITIGATE HIS GROUNDS FOR POST-CONVICTION RELIEF. U.S. CONST. AMEND. XIV; OHIO CONST. ART. I, § 16.
 {¶ 11} "III. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT MINIMUM, AN EVIDENTIARY HEARING."
 Standard of Review {¶ 12} R.C. 2953.21(A) states, in part, as follows: "(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief *Page 5 
relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief".
 {¶ 13} A petition for post-conviction relief is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. Although designed to address claimed constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun (1999), 86 Ohio St. 3d 279, 281; State v.Steffen (1994), 70 Ohio St.3d 399, 410. A petition for post-conviction relief, thus, does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. State v.Jackson (1980), 64 Ohio St.2d 107, 110. State v. Lewis, Stark App. No. 2007CA00358, 2008-Ohio-3113 at ¶ 8.
 A. Right to Evidentiary Hearing. {¶ 14} In determining whether a hearing is required, the Ohio Supreme Court in State v. Jackson (1980), 64 Ohio St.2d 107, stated the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case.
 {¶ 15} As the Supreme Court further explained in Jackson, supra, "[b]road assertions without a further demonstration of prejudice do not warrant a hearing. . . ." Id. at 111. Accordingly, "a trial court properly denies a defendant's petition for post conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not *Page 6 
demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 16} In State v. Phillips, supra, the court noted that the evidence submitted in support of the petition "`must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [State v. Perry (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'"(Citation omitted.) State v. Lawson (1995),103 Ohio App.3d 307, 315, 659 N.E.2d 362. Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial. State v.Combs (1994), 100 Ohio App.3d 90, 98, 652 N.E.2d 205.
 {¶ 17} In order for an indigent petitioner to be entitled to an evidentiary hearing in a post conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part Strickland v. Washington (1984), 466 U.S. 668 test is to be applied.Hill v. Lockhart (1985), 474 U.S. 52, 58; State v. Lytle (1976),48 Ohio St. 2d 391; State v. Bradley (1989), 42 Ohio St. 3d 136; State v. Cole,supra, 2 Ohio St. 3d at 114. The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.
 {¶ 18} Furthermore, before a hearing is granted in proceedings for post conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner *Page 7 
bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. Calhoun, 86 Ohio St.3d at 289,714 N.E.2d 905; State v. Jackson (1980), 64 Ohio St.2d 107,413 N.E.2d 819, syllabus; see, also Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693; State v. Phillips, supra.
 B. Res Judicata. {¶ 19} Another proper basis upon which to deny a petition for post conviction relief without holding an evidentiary hearing is resjudicata. Lentz, 70 Ohio St.3d at 530; State v. Phillips, supra.
 {¶ 20} Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. State v. Szefcyk (1996), 77 Ohio St.3d 93, 671 N.E.2d 233, syllabus, approving and following State v. Perry (1967),10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. It is well-settled that, "pursuant to res judicata, a defendant cannot raise an issue in a [petition] for post conviction relief if he or she could have raised the issue on direct appeal." State v. Reynolds (1997), 79 Ohio St. 3d 158,161, 679 N.E.2d 1131. Accordingly, "[t]o survive preclusion by resjudicata, a petitioner must produce new evidence that would render the judgment void or voidable and must also show that he could not have appealed the claim based upon information contained in the original *Page 8 
record." State v. Nemchik (Mar. 8, 2000), Lorain App. No. 98CA007279, unreported, at 3; see, also, State v. Ferko (Oct. 3, 2001), Summit App. No. 20608, unreported, at 5; State v. Phillips, supra.
 {¶ 21} Similarly, regarding claims of ineffective assistance of trial counsel in post conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post conviction relief."State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; see, also, Lentz, 70 Ohio St.3d at 530, 639 N.E.2d 784; State v.Phillips, supra.
 C. Substantive Claims I (B). {¶ 22} In the second issue of his first assignment of error, appellant claims that the trial court improperly denied his amended PCR petition based, in part, upon his failure to comply with the provisions of R.C. 2969.25(A). We disagree.
 {¶ 23} We begin our analysis of the trial court's decision in the case at bar by noting a reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason.State v. Lozier (2004), 101 Ohio St.3d 161, 166, 2004-Ohio-732 at ¶ 46,803 N.E.2d 770, 775. [Citing State ex rel. McGinty v. Cleveland CitySchool Dist. Bd. of Edn. (1998), 81 Ohio St.3d 283, 290,690 N.E.2d 1273]; Helvering v. Gowranus (1937), 302 U.S. 238, 245, 58 S.Ct. 154,158. *Page 9 
 {¶ 24} R.C. 2969.25(A) provides: "[a]t the time that an inmate commences a civil action or appeal against a government entity or employee, the inmate shall file with the court an affidavit that contains a description of each civil action or appeal of a civil action that the inmate has filed in the previous five years in any state or federal court."
 {¶ 25} In the case at bar, the trial court issued six-pages of findings of facts and conclusions of law addressing the substantive claims raised by appellant in his petition. In fact, the numerous issues presented, and assignments of errors raised, in the instant appeal are based upon the trial court's rulings relative to the merits of appellant's grounds for relief which he raised in his petition. Accordingly, error, if any, in the trial court's one sentence reference to R.C. 2969.25(A) in its Judgment Entry does not preclude us from addressing the merits of appellant's assignments of error on this appeal. Therefore error, if any, is not prejudicial as appellant's rights have not been abridged.
 {¶ 26} Accordingly, that portion of appellant's first assignment of error is denied.
 II. {¶ 27} In his second assignment of error, the appellant claims he was entitled to conduct discovery, and entitled to the appointment of experts to further support his claims. We disagree.
 {¶ 28} We have previously rejected this argument. State v.Elmore, 5th Dist. No. 2005-CA-32, 2005-Ohio-5940
at ¶ 25. There is no provision for conducting discovery in the post-conviction process. State ex Rel. Love v. Cuyahoga CountyProsecutor's Office, 86 Ohio St.3d 279, 281, 714 N.E.2d 905,1999-Ohio-102. The power to conduct and compel discovery in post-conviction is not included within a trial court's statutorily *Page 10 
defined authority. The power to conduct and compel discovery in post-conviction is not included within a trial court's statutorily defined authority. State v. Sherman, (Oct. 30, 2000), Licking App. No. 00CA39. See, also, State v. Dean (2002), 149 Ohio App.3d 93,776 N.E.2d 116; State v. White (Aug. 7, 1998), Ashland App. No. 97COA01229.
 {¶ 29} "Because there is no federal constitutional right to a post-conviction review process, Ohio's post-conviction proceedings afford only a narrow remedy strictly defined by statute and granting no rights to a petitioner beyond those spelled out in R.C. 2953.21.State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, at ¶ 13. While the statute explicitly provides for appointment of counsel in post-conviction proceedings when the petitioner has been sentenced to death, the statute nowhere provides a right to funding or appointment of expert witnesses or assistance in a post-conviction petition. State v.Tolliver, Franklin App. No. 04AP-591, 2005-Ohio-989, at ¶ 25, citingState v. Smith (2000), Ninth Dist. App. 98CA-007169, and State v.Hooks (1998), Second Dist. App. No. CA 16978." State v. Conway, Franklin App. No. 05AP-550, 2006-Ohio-6219 at ¶ 15. A petitioner in a post conviction proceeding is not entitled to the appointment of an expert witness to assist in discovery. State v. Garner (Dec. 19, 1997), Hamilton App. No. C-960995, 1997 WL 778982, citing Ake v. Oklahoma
(1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53; State v.Crowder (1991), 60 Ohio St.3d 151, 573 N.E.2d 652; See State v.Yost (May 4, 2001), Licking App. No. 00CA104, See, also, State v.Dean, Delaware App. No. 01 CA-A-10-055, 2002-Ohio-4203 at ¶ 13.
 {¶ 30} "Further, appellant has not demonstrated any prejudice by the court's failure to grant him discovery. Appellant submitted hundreds of pages in support of his petition for post-conviction relief. It does not appear that appellant's presentation of *Page 11 
materials in support of his petition was hampered in any way by the court's failure to allow him to conduct discovery." State v.Ashworth (Nov. 8, 1999), 5th Dist. No. 99-CA-60; See also, Williams v.Bagley (6th Cir. 2004), 380 F.3d 932, 967.
 {¶ 31} Appellant's second assignment of error is denied.
 I. (A) III. {¶ 32} In the first issue of his first assignment of error appellant contends that the trial court erred in denying his amended PCR petition on the basis of res judicata. In his third assignment of error, appellant argues that the trial court erred in dismissing his amended PCR petition without first conducting an evidentiary hearing. The assignments of error are interrelated and will be addressed together.
 {¶ 33} For clarity this Court will address each ground raised in the amended PCR petition in the order they were raised in the petition.
 First and Second Grounds for Relief {¶ 34} In his first ground for relief, the appellant claimed that his convictions and sentences were void or voidable because he was the subject of "excessive security measures" during his trial. Specifically, appellant was required to wear a stun belt on his arm throughout the jury trial.
 {¶ 35} In the second ground for relief appellant claimed that he was denied the effective assistance of counsel because his trial counsel did not object to, and did not request a hearing on these security measures.
 {¶ 36} As these matter address related claims, they will be addressed together.
 {¶ 37} Appellant raised this issue in his direct appeal in the Ohio Supreme Court. See, State v. Davis, 116 Ohio St.3d 404, 880 N.E.2d 31,2008-Ohio-2 at ¶ 343. In that *Page 12 
case, the court noted "Davis asserts that his counsel were ineffective by failing to request a hearing on the necessity of Davis's wearing shackles during the trial. However, nothing in the record indicates that Davis was tried in shackles or that any restraint used was visible to the jury. Thus, this claim lacks merit." Id.
 {¶ 38} In the case at bar, the trial court found that appellant's claim and materials submitted outside the record to support his claim that he was the subject of "excessive security measures" during his trial lacked substantive merit.
 {¶ 39} Initially we note that evidence offered de hors the record must be more than evidence which was in existence and available to the appellant at the time of the trial and which could and should have been submitted at trial if the appellant wished to make use of it. Simply put, the purpose of post conviction proceedings is not to afford one convicted of a crime a chance to retry his case.
 {¶ 40} In support of his amended PCR petition appellant submitted his own affidavit in which he claims to have been "worried" or had difficulty paying attention due to his concern about being "accidentally" shocked. As a "self-serving" affidavit the trial court could give it little or no weight. State v. Calhoun (1999),86 Ohio St.3d 279, 281, 714 N.E.2d 905; State v. Kapper (1983), 5 Ohio St.3d 36,38, 448 N.E.2d 823 (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect would not, because the former are not self-serving declarations).
 {¶ 41} The trial court was in the best position to observe the appellant's demeanor and notice if anything about the security arrangement was interfering with his involvement in his trial. Indeed the trial court itself noted that the appellant had *Page 13 
"expressed no complaints, despite being asked." (Judgment Entry, January 14, 2008.) During the course of appellant's jury trial there were occasions where, prior to formally reconvening proceedings, the trial court casually asked the appellant such things as "How are you doing?" and similar questions. On none of these occasions did the appellant respond to these inquiries by commenting on his security restraint being some type of distraction.
 {¶ 42} The decision to impose restraints upon a defendant in a criminal trial is left to the discretion of the trial court.Illinois v. Allen (1970), 397 U.S. 337, 343-44, 90 S.Ct. 1057, State v.Adams (2004), 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29. Although the trial court in the case at bar, did not hold a hearing on the use of the arm shocker this does not automatically result in a reversal: "[a]lthough we stress that the preferred and encouraged practice prior to handcuffing a defendant during any phase of trial is to hold a hearing on the matter, we do not find this to be an absolute rule. Where the facts and circumstances surrounding a defendant illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it. Had the lower court in the case sub judice held a hearing on the matter, it would be much easier to review its decision to handcuff appellant and to place the deputies with him. Even though such a hearing did not take place, we find that the trial judge's actions did not amount to plain error." State v. Franklin (2002), 97 Ohio St.3d 1,19-20, 2002-Ohio-5304 at ¶ 82, 776 N.E.2d 26, 47.
 {¶ 43} The evidence against appellant was overwhelming. See, State v.Davis, supra, 116 Ohio St.3d 404, 880 N.E.2d 31, 2008-Ohio-2 at ¶ 123. Further the state *Page 14 
presented affidavits in opposition to the amended PCR petition which indicated the appellant had a prior record for criminal offenses and failing to appear in court. The appellant was serving prison time in Florida for a probation/parole violation when he was first identified as a suspect. In addition he had been out on bond related to charges in Franklin County, Ohio for Kidnapping and Attempted Rape for which he failed to appear in court on at least one occasion. Appellant has submitted no evidence outside the record, other than his own affidavit to establish the stun device was visible to the jury or that it distracted him from concentrating on his case.
 {¶ 44} Had the lower court in the case sub judice held a hearing on the matter, it would be much easier to review its decision to utilize the arm shocker. Even though such a hearing did not take place, we find that the trial judge's actions did not amount to error. We find no prejudice to appellant as a result of the use of the stun device at trial. The result of the trial was not unreliable nor was the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 45} Lastly, appellant's ineffective assistance of counsel claims based upon his trial counsel's failure to raise these issues before the trial court likewise lacks merit because appellant has failed to set forth sufficient operative facts to demonstrate prejudice resulting from his trial counsel's allegedly deficient representation. SeeCalhoun, 86 Ohio St.3d at 289, 714 N.E.2d 905.
 {¶ 46} Accordingly, we find the appellant has failed to sustain his burden of demonstrating that an error affected his substantial rights.United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770;State v. Perry (2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. We find no manifest miscarriage of justice occurred in this *Page 15 
case. State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118,802 N.E.2d at 646.
 {¶ 47} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 48} Accordingly, appellant's first and second grounds for relief are denied.
 THIRD GROUND FOR RELIEF {¶ 49} In his third ground for relief, the appellant claimed that he was not provided with impeachment evidence related to the testimony of the state's jail house informant witness Richard Hummel regarding a claim that he had violated the terms of probation. We disagree.
 {¶ 50} Appellant raised this issue in his direct appeal in the Ohio Supreme Court. See, State v. Davis, 116 Ohio St.3d 404, 880 N.E.2d 31,2008-Ohio-2 at ¶ 335-340. The court found, "Davis has not supported hisBrady claim with sufficient evidence. It is highly speculative whether the failure to disclose the alleged probation violation is `material' because Davis has failed to provide any specifics about the violation. Moreover, Davis fails to show a reasonable probability that the result of the proceeding would have been different if the information had been disclosed before trial. Information about a probation violation might have impeached Hummel's credibility. However, impeachment evidence would not have been significant in the outcome of the case because DNA evidence established Davis's guilt." Id. *Page 16 
 {¶ 51} In support of his amended PCR petition appellant submitted his own affidavit and two photocopies of letters purportedly written by Hummel bearing a file stamp from the Licking County Municipal Court of September 24, 2001 and September 4, 2002, respectively. [Exhibit M]. These letters indicate that the writer was in jail for "DUI, DUS and No Seat belt." [Id.]. These documents were not authenticated and are not admissible to prove the truth of the matters contained therein. Accordingly, they are therefore only marginally relevant to appellant's petition. Assuming arguendo the letters are admissible they do nothing to advance appellant's claim.
 {¶ 52} The Ohio Supreme Court, in State v. Greer, held that violation of parole is an appropriate subject for impeachment oriented cross-examination since such a violation constitutes a specific instance of failure to keep one's word and thus is usually probative of truthfulness or untruthfulness. See State v. Greer (1988)39 Ohio St.3d 236, 530 N.E.2d 382; State v. Moore (March 6, 2000), Stark App. No. 1999CA00126. The Ohio Supreme Court, in so holding, specifically cited to Evidence Rule 608(B). Likewise, a violation of probation is probative evidence of a witness' character for truthfulness or untruthfulness since such a violation also involves a failure to keep one's promise to observe certain terms and conditions. State v. Moore, supra.
 {¶ 53} In Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. A successful Brady claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant *Page 17 
evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice. See Strickler v. Greene (1999),527 U.S. 263, 281-82, 119 S.Ct. 1936; Bell v. Bell (6th Cir, 2008), 512 F.3d 223, 231.
 {¶ 54} However, we find the failure to disclose this evidence to appellant did not violate Brady.
 {¶ 55} First, because Hummel's testimony was based upon statements appellant made to him while they were in jail together, appellant easily could have pursued any pending charges against Hummel and their disposition. Bell v. Bell supra 512 F.3d at 231. At appellant's trial Hummel specifically referred to the fact that he was in the Licking County Jail because he "got picked up for a DUI." (5T. at 1386; 1387). Further after Hummel's testimony the prosecutor read a stipulation of fact where, among other things, the parties agreed that Hummel had been booked into the Licking County Justice Center on October 24, 2004 at 1:53 a.m. (5T. at 1408-1409). Clearly the jury was aware that Hummel had a criminal record. Thus, if the jury had been given the information concerning Hummel's misdemeanor probation violation it could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley (1995),514 U.S. 419, 435, 115 S.Ct. 1555.
 {¶ 56} Further, the municipal court records of Hummel are matters of public record. See Matthews v. Ishee (6th Cir. 2007),486 F.3d 883, 890-91 (concluding that witness's withdrawal of original guilty plea, plea to reduced charges, and resentencing were public information and that government could not have "disclosed" information "readily available to the defense"); Spirko v. Mitchell (6th Cir. 2004),368 F.3d 603, 611(holding that where evidence is available from sources other than the state and *Page 18 
defendant was "aware of the essential facts necessary for him to obtain that evidence," the Brady rule does not apply). Coe v. Bell (6th Cir. 1998), 161 F.3d 320, 344 (There is no Brady violation where information is available to the defense "because in such cases there is really nothing for the government to disclose.").
 {¶ 57} A Brady violation did not occur in the case at bar because the records concerning Hummel's charges and probation violation were publicly available and appellant could have obtained access to them.
 {¶ 58} Appellant's third ground for relief is denied.
 FOURTH GROUND FOR RELIEF {¶ 59} In his fourth ground for relief the appellant claimed that his convictions and sentences were void or voidable because he was denied the effective assistance of counsel at the mitigation phase of the trial by his trial attorneys not adequately investigating and presenting mitigation evidence.
 {¶ 60} A claim which attacked trial counsels' decisions regarding mitigation witnesses was actually presented on direct appeal.Davis, 116 Ohio St.3d 404 at ¶ 348-353. The material presented with the petition, although perhaps from new sources, and therefore not in the original trial record, was merely cumulative that which was presented at trial. Evidence that is merely cumulative to that which was presented at trial does not overcome res judicata. Elmore, at ¶ 36. Although the trial court did not appear to directly deny this ground on the basis of res judicata, in light of the decision in Davis, it certainly could have. As noted below, the materials presented with the petition were largely cumulative to what was offered at trial. *Page 19 
 {¶ 61} The Supreme Court of Ohio noted, "trial counsel presented the testimony of Davis's mother, brother, aunt, and two lifelong family friends. The witnesses testified that Davis had an alcoholic father who frequently beat his mother and abused other family members. Davis's mother and brother testified about his ear problems, and his school records showed that he was a poor student with a low IQ . . . Rose Weimer, the defendant's mother, testified that she left home for three months to escape her husband's abuse. Weimer returned home after learning that her husband had placed their children in a children's home. Weimer then "got all of them back." She also testified about Davis's hearing problems, which his father ignored. Thus, the jury heard testimony that Davis spent time at a children's home and suffered from hearing problems when he was young. It is highly speculative whether additional noncumulative testimony could have been provided about these matters." Davis, supra at ¶ 352; 355.
 {¶ 62} "The decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel." State v. Keith, 79 Ohio St.3d at 536,684 N.E.2d 47. "`Attorneys need not pursue every conceivable avenue; they are entitled to be selective.'" State v. Murphy, 91 Ohio St.3d at 542,747 N.E.2d 765, quoting United States v. Davenport (C.A.7, 1993),986 F.2d 1047, 1049. Davis, supra at ¶ 354.
 {¶ 63} Further, decisions regarding what witnesses to call fall within trial strategy and, absent prejudice, generally will not constitute ineffective assistance of counsel. State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321. To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence counsel failed to present, but, also, "there is a reasonable probability that the evidence would *Page 20 
have swayed the jury to impose a life sentence." Keith at 536,684 N.E.2d 47. We find no such evidence here.
 {¶ 64} In support of his amended PCR petition appellant presented affidavits of an aunt, his mother, his sister and his wife. Appellant's mother and aunt both testified during the mitigation phase of appellant's jury trial. Accordingly, their affidavits are cumulative to the testimony presented at trial. The remaining affidavits simply reiterate the evidence concerning appellant's upbringing, hearing problems and low IQ.
 {¶ 65} We conclude that the evidence outside the record is only cumulative of the evidence that was presented to the jury. State v.Madrigal (Nov. 17, 2000), 6th Dist. No. L-00-1006 at 7. The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 66} We find there is no reasonable probability that the testimony by family members or other mitigating evidence set forth in appellant's fourth claim for relief would have swayed the jury to impose a life sentence.
 {¶ 67} Appellant's fourth ground for relief is denied.
 FIFTH GROUND FOR RELIEF {¶ 68} In the fifth ground for relief the appellant sought to have his death sentence declared void or voidable by alleging that the imposition of the death penalty by lethal injection violates the Eighth Amendment.
 {¶ 69} Appellant has submitted no affidavits or documentary evidence that was not available to him during his jury trial to support this claim for relief. Further, appellant *Page 21 
does not argue that evidence outside of the trial court record is necessary to a resolution of this issue.
 {¶ 70} Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.
 {¶ 71} This claim was actually presented on direct appeal. "We summarily reject Davis's various claims in proposition of law XVII challenging the constitutionality of Ohio's death-penalty statutes.State v. Carter (2000), 89 Ohio St.3d 593, 607, 734 N.E.2d 345;State v. Jenkins, 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph one of the syllabus.
 {¶ 72} "We also reject Davis's claim that Ohio's death-penalty statutes violate international law and treaties to which the United States is a party. See State v. Bey (1999), 85 Ohio St.3d 487, 502,709 N.E.2d 484." Davis, 116 Ohio St.3d 404 at ¶ 382-383.
 {¶ 73} As appellant was able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata. State v. Elmore, Licking App. No. 2005-CA-32, 2005-Ohio-5940 at ¶ 150-153.
 {¶ 74} Assuming arguendo the claim was not barred by res judicata appellant's claim must still fail.
 {¶ 75} "Not only has the Supreme Court of Ohio systematically rejected this facial challenge to our state's current capital punishment method, but more recently, the United States Supreme Court decided this very issue, holding that lethal injection is not per se cruel and unusual. See Baze v. Rees (Apr. 16, 2008), No. 07-5439, *Page 22 128 S.Ct. 1520 (recognizing the consensus that lethal injection is the humane method of execution to date).
 {¶ 76} "`Reasonable people of good faith disagree on the morality and efficacy of capital punishment, and for many who oppose it, no method of execution would ever be acceptable. * * *
 {¶ 77} "`Kentucky has adopted a method of execution believed to be the most humane available, one it shares with 35 other States. Petitioners agree that, if administered as intended, that procedure will result in a painless death. The risks of maladministration they have suggested-such as improper mixing of chemicals and improper setting of IVs by trained and experienced personnel-cannot remotely be characterized as "objectively intolerable.'[Baze, supra. at _____ U.S. _____,128 S.Ct. at 1537-1538.]
 {¶ 78} "The lethal injection procedure used in Ohio is substantially similar to the one affirmed by the United States Supreme Court inBaze. Alan Johnson, Lethal Injection Gets Legal Go-Ahead: Capital Cases in Ohio, 34 Other States Affected, Columbus Dispatch (Ohio) (Apr. 17, 2008). Therefore, we cannot find that Ohio's method of lethal injection violates the Eighth Amendment." State v. Bethel, Franklin App. No. 07AP-810, 2008-Ohio-2697 at ¶ 61-62; State v. Frazier, Lucas App. No. l-07-1388, 2008-Ohio-5027 at ¶ 64.
 {¶ 79} Appellant's fifth ground for relief is denied. *Page 23 
 SIXTH GROUND FOR RELIEF {¶ 80} In the sixth ground for relief the petition claimed that appellant's convictions and sentences are void or voidable because Ohio's post-conviction statutes are inadequate. We disagree.
 {¶ 81} Appellant has submitted no affidavits or documentary evidence outside the trial court record to support this claim for relief. Further, appellant does not argue that evidence outside of the trial court record is necessary to a resolution of this issue. As appellant was able to raise and fully litigate this issue on direct appeal, this court concludes that the trial court did not err in finding that the issue was barred by res judicata.
 {¶ 82} Assuming arguendo the claim is not barred by res judicata appellant's claim must still fail.
 {¶ 83} "We have previously held in a capital case that where the appellant does not go beyond mere conclusory allegations that the process is inadequate, the appellant has not demonstrated that post-conviction relief scheme is unconstitutional. State v.Gilliard (1998), Stark App. No. 1997CA00318, unreported. See, also,State v. Skelnar (1991) 71 Ohio App.3d 444, 449, 594 N.E.2d 88
(R.C. 2953.21 is not unconstitutional); State v. Fox (May 16, 1997), Wood App. No. WD-96-031, unreported, (claim that post-conviction relief statute is inadequate, as relief is never granted, is not well taken)." State v.Ashworth (Nov. 8, 1999), 5th Dist. No. 99-CA-60; See also, Williams v.Bagley (6th Cir. 2004), 380 F.3d 932, 967; State v. Elmore, supra at ¶ 145-148.
 {¶ 84} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to *Page 24 
establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 85} Appellant's sixth ground for relief is denied.
 SEVENTH GROUND FOR RELIEF {¶ 86} In the seventh ground for relief, the petition raised no new grounds but merely alleges that the "cumulative" errors alleged in the previous grounds collectively justify declaring his convictions and sentences void or voidable.
 {¶ 87} In light of our disposition overruling appellant's previous claims and assignments of error there is no "cumulative error."
 {¶ 88} Appellant's seventh ground for relief is denied.
 EIGHTH GROUND FOR RELIEF {¶ 89} In the eighth ground for relief the petition claimed that presenting the jury a tape of appellant's statements to police without first playing this tape in open court violated his rights to be present at a critical stage of the proceedings.
 {¶ 90} Appellant has in fact raised this issue in his direct appeal in the Ohio Supreme Court. See, State v. Davis, 116 Ohio St.3d 404,880 N.E. 2d 31, 2008-Ohio-2 at ¶ 89-92. The Ohio Supreme Court held,
 {¶ 91} "Davis waived this claim by failing to object to the admission of the tapes without playing them in open court. See State v.Brinkley, 105 Ohio St. 3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 122. Moreover, Davis's right to be present was not violated. He was present in court when the tape recording and transcript were offered and admitted into evidence. He could review the verbatim transcript of the tapes when the tapes were admitted. *Page 25 
 {¶ 92} "Davis claims that waiver does not apply because he did not personally waive his right to be present on the record, and the trial court did not find that such waiver was knowingly and intelligently made. However, we hold that the trial court was not required to conduct a colloquy on the record to establish a knowing waiver of Davis's right to be present. United States v. Riddle (C.A.6, 2001), 249 F.3d 529, 534. We reject this claim." Id.
 {¶ 93} Accordingly, we find the matter is res judicata, the Ohio Supreme Court having ruled upon this claim.
 {¶ 94} The only evidence submitted in support of this ground for relief was appellant's own affidavit. As a "self-serving" affidavit the trial court could give it little or no weight. State v. Calhoun (1999),86 Ohio St.3d 279, 281, 714 N.E.2d 905; State v. Kapper (1983),5 Ohio St.3d 36, 38, 448 N.E.2d 823 (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect would not, because the former are not self-serving declarations).
 {¶ 95} Appellant's eighth ground for relief is denied.
 NINTH GROUND FOR RELIEF {¶ 96} In the ninth ground for relief the petition claimed that his rights were violated by the absence of African-Americans on his jury. We disagree.
 {¶ 97} Appellant has not claimed that the state failed to follow Ohio's statutory procedure for selecting jurors under R.C. Chapter 2313, or that said procedure itself intentionally or systematically excludes any cognizable group. Instead, appellant argues only that counsel was ineffective for not arguing that his venire did not represent a fair *Page 26 
cross-section of the community because it did not include a sufficient number of blacks or other minorities. State v. Elmore, supra,2005-Ohio-5940 at ¶ 54.
 {¶ 98} The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community." Taylor v.Louisiana (1975), 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690,696. To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." State v. Fulton (1991), 57 Ohio St.3d 120,566 N.E.2d 1195, paragraph two of the syllabus, citing Duren v.Missouri (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579,586-587.
 {¶ 99} A criminal defendant has no affirmative right to a jury of a particular racial, gender or age composition. See United States v.Mack, 159 F.3d 208 (6th Cir. 1998); see also Taylor v. Louisiana,419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
 {¶ 100} Moreover, appellant's systematic-exclusion claim is based solely on alleged under representation on his venire. But under representation on a single venire is not systematic exclusion. State v.McNeill (1998), 83 Ohio St.3d 438, 444, 700 N.E.2d 596. See, alsoFord v. Seabold (C.A.6, 1988), 841 F.2d 677, 685. Cf. Duren,439 U.S. at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588 (discrepancy "not just occasionally, but in every weekly venire for a period of nearly a year" showed systematic exclusion). State v. McNeill (1998),83 Ohio St.3d 438, 445, 1998-Ohio-293, 700 N.E.2d 596, 604; State *Page 27 v. Elmore, supra at ¶ 57. Appellant's failure to point to any evidence supporting a prima facie violation of the fair cross-section requirement defeats this claim. See, e.g., United States v. Allen, 160 F.3d 1096,1103-04 (6th Cir. 1998) (finding no Sixth Amendment fair cross-section violation where defendants failed to meet second and third prongs ofprima facie case).
 {¶ 101} Appellant failed to present evidence outside of the record to make the necessary showing under Fulton, Seabold, Duren, and the other authorities mentioned to indicate deliberate exclusion of "distinctive groups" of the jury venire or jury panel involved. The statistical data does nothing to demonstrate intentional, systematic exclusion of minorities in the jury-selection process. State v. Elmore, supra, at ¶ 61.
 {¶ 102} This was not a case of a racially motivated crime. Race was simply never an issue in appellant's case. Moreover, each impaneled juror confirmed that he or she had not formed an opinion about the guilt or innocence of the accused, or could put aside any opinion, and that he or she could render a fair and impartial verdict based on the law and evidence. State v. Treesh (2001), 90 Ohio St.3d 460, 464,739 N.E.2d 749, 759.
 {¶ 103} To establish an equal protection violation, the defendant must "adduc[e] statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose." Id. This evidence is then subject to rebuttal evidence suggesting that either no discriminatory purpose was involved or that such purpose had no "determinative effect." Id.;Duren, 439 U.S. at 368, 99 S.Ct. at 670, 58 L.Ed.2d at 589, fn. 26.State v. Jones (2001), 91 Ohio St.3d 335, *Page 28 
340-41, 2001-Ohio-57, 744 N.E.2d 1163, 1173. Importantly, "[t]he challenger must show under representation over a significant period of time [.]" State v. McNeill, 83 Ohio St.3d 438, 444, 700 N.E.2d 596.
 {¶ 104} In the present matter, appellant did not attempt to demonstrate under representation over a significant period of time; consequently, this court concludes that the trial court did not err in determining that appellant failed to set forth sufficient operative facts establishing substantive grounds for relief on his equal protection claim.
 {¶ 105} Appellant's ninth ground for relief is denied.
 TENTH GROUND FOR RELIEF {¶ 106} In the tenth ground for relief the petition claimed that the appellant's rights were violated by the failure to have a change of venue due to pre-trial publicity.
 {¶ 107} Appellant has in fact raised this issue in his direct appeal in the Ohio Supreme Court. See, State v. Davis, 116 Ohio St.3d 404,880 N.E.2d 31, 2008-Ohio-2 at ¶ 42-51. The Ohio Supreme Court held, in pertinent part, "We also reject Davis's assertion that his counsel was ineffective by failing to develop the record about the level of pretrial publicity in his case. The trial court was well aware of the extent of pretrial publicity because many prospective jurors acknowledged that they had heard something about the case. Thus, Davis has failed to show how trial counsel's failure to submit newspaper clippings and other media stories was prejudicial." Id. at 50.
 {¶ 108} The Ohio Supreme Court further noted, "The record shows that the voir dire on pretrial publicity was comprehensive. The trial court asked the prospective jurors whether any of them knew about the case through firsthand information or media coverage. The trial court then asked prospective jurors who had indicated some *Page 29 
familiarity with the case whether they could lay aside what they had heard and decide the case solely upon the evidence presented at trial. Counsel were then given the opportunity to fully question the prospective jurors about their exposure to pretrial publicity. Following thorough questioning, the trial court excused members of the venire who had formed fixed opinions due to pretrial publicity or were otherwise unsuitable." Id. at 45.
 {¶ 109} Accordingly, we find the matter is res judicata, the Ohio Supreme Court having ruled upon this claim.
 {¶ 110} Appellant's tenth ground for relief is denied.
 ELEVENTH GROUND FOR RELIEF {¶ 111} In the eleventh ground for relief the petition alleged that trial counsel failed to investigate the case and presented "no defense" to the charges in this case. We disagree.
 {¶ 112} Appellant first contends that his trial counsel were ineffective for failing to present evidence that he was a "drug mule" to explain how he came into a large sum of money in July 2000.
 {¶ 113} This evidence was already before the jury as part of his statement to Newark Police Detectives. (See, State's Exhibits Nos. 12-A.1, 12-A.2 and the transcript thereof, Exhibit 12-B, at 73-75.) See, also, State v. Davis, supra, at ¶ 24; 29. Accordingly, we find this matter is res judicata. State v. Johnson, supra, 112 Ohio St.3d at 229,2006-Ohio-6404 at ¶ 136-138, 858 N.E. 2d at 1167-78.
 {¶ 114} Appellant next argues that there was some form of evidence that would support a conclusion that Teri Paxon and Susan Fowls were mistaken as to the *Page 30 
appellant being the person in their restaurant engaging them in conversation about a reward poster regarding Mrs. Sheeler's murder.See, Davis, supra, 116 Ohio St.3d 404, 2008-Ohio-2 at ¶ 32-33.
 {¶ 115} The only "evidence" presented is the appellant's unsupported claim that had Ms. Paxon been asked to obtain the repair bill for an air conditioner service call, it would have placed this conversation at a time when the appellant claims he was in Florida. Further, appellant contends that neither witness mentioned his significant speech impediment.
 {¶ 116} As a "self-serving" affidavit the trial court could give it little or no weight. State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E.2d 905; State v. Kapper (1983), 5 Ohio St.3d 36, 38,448 N.E.2d 823 (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect would not, because the former are not self-serving declarations).
 {¶ 117} Even if we were to consider the affidavit we would find that it is only marginally significant. "[E]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of Perry by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." State v. Coleman (March 17, 1993), 1st Dist. No. C-900811, at 7; State v. Combs (1994), 100 Ohio App.3d 90, 98,653 N.E.2d 205, 209.
 {¶ 118} Nothing prevented appellant from presenting any alibi evidence during his trial. It does not appear that appellant's speech pattern was inquired into by the *Page 31 
parties of Ms. Paxton or Ms. Fowls, or any other non-mitigation related witness. This may very well have been a tactical decision by appellant's trial counsel. Had the witnesses testified to the speech impediment it would strengthened the witnesses' identification of appellant. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690, 104 S.Ct. 2052
(counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic, 466 U.S. 648, 656,104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v. Gentry (2003),540 U.S. 1, 8, 124 S.Ct. 1, 6. The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable.State v. Clayton (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35,402 N.E.2d 1189." State v. Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186,217.
 {¶ 119} Appellant has not presented any evidence that such a repair bill exits; nor does he support his claim with an affidavit from Ms. Paxon, Ms. Fowls or the person who repaired the air conditioner. No business records were presented to verify said repair. Appellant does not indicate on which dates he claims to have been in Florida, and why this information was not presented at trial. *Page 32 
 {¶ 120} Accordingly, appellant failed in his initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. Calhoun, 86 Ohio St.3d at 289, 714 N.E.2d 905;State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus; see, also Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674, 693; State v. Phillips, supra.
 {¶ 121} Appellant has further failed to demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 122} Appellant's eleventh ground for relief is denied.
 TWELETFH GROUND FOR RELIEF {¶ 123} In the twelfth ground for relief the appellant claimed that his counsel was ineffective for not using a clinical or forensic psychologist as a witness. We disagree.
 {¶ 124} Appellant has in fact raised this issue in his direct appeal in the Ohio Supreme Court. See, State v. Davis, 116 Ohio St.3d 404,880 N.E.2d 31, 2008-Ohio-2 at ¶ 348-356. The Ohio Supreme Court held, in pertinent part,
 {¶ 125} "Davis argues that his counsel were ineffective during the penalty phase by failing to fully investigate, prepare, and present mitigating evidence.
 {¶ 126} "The presentation of mitigating evidence is a matter of trial strategy. State v. Keith, 79 Ohio St. 3d at 530, 684 N.E.2d 47. "Moreover, `strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, *Page 33 804 N.E.2d 433, ¶ 189, quoting Wiggins v. Smith (2003), 539 U.S. 510, 521,123 S.Ct. 2527, 156 L.Ed.2d 471." Davis, supra at ¶ 348-349.
 {¶ 127} In his direct appeal, the Ohio Supreme Court conducted an independent proportionality review and concluded, "[w]e find nothing in the nature and circumstances of the offense to be mitigating. On July 10 or July 11, 2000, Davis entered Sheeler's apartment and murdered Sheeler by stabbing her in the neck and chest. Davis stole money from the apartment and fled the scene. These facts establish a horrific crime without any mitigating features." Id. at ¶ 397.
 {¶ 128} The Ohio Supreme Court further noted, "Davis called five mitigation witnesses. He also introduced his medical records from Children's Hospital, his academic records, and a statement that he had not been disciplined while in pretrial confinement. Davis did not present a sworn or unsworn statement." Id. at ¶ 385.
 {¶ 129} The Court further noted, "[w]e also conclude that Davis's intellectual deficiencies do not qualify as a mental disease or defect under R.C. 2929.04(B) (3). Davis's academic records show that Davis has an IQ between 74 and 84. However, the evidence at trial did not establish that he was mentally retarded. However, Davis's limited intellectual abilities are entitled to weight under the catchall provision of R.C. 2929.04(B) (7).
 {¶ 130} "We recognize and give weight to other mitigating factors under R.C. 2929.04(B) (7). Such evidence includes the support that Davis shares with his family, and his long work history. Testimony that Davis was victimized by an abusive father is also entitled to weight as a mitigating "other factor. . . . Finally, we give weight to Davis's *Page 34 
lack of disciplinary infractions while in pretrial confinement. The evidence does not suggest any other (B) (7) mitigating factors." Id. at 402.
 {¶ 131} As noted by the Ohio Supreme Court, "[t]he defense hired Dr. Dennis Eshbaugh, a psychologist, several weeks before the penalty phase to assist in preparing mitigation. The record does not show why Dr. Eshbaugh was not called to testify or what testimony he would have provided." Id. at ¶ 350.
 {¶ 132} While the petition contains a voluminous affidavit from Monique N. Coleman, Psy.D., a clinical and forensic psychologist, the information is cumulative of the information that was presented during the mitigation phase of appellant's trial. Combs, supra,100 Ohio App.3d at 98, 652 N.E.2d 205.
 {¶ 133} "This is not, however, a case where counsel simply abdicated their responsibility to their client, thus necessitating an evidentiary hearing to determine the effectiveness of their representation. Cf.State v. Scott (1989), 63 Ohio App.3d 304, 578 N.E.2d 841 (remanding to the trial court for a hearing on counsel's effectiveness);Johnson (finding counsel ineffective and reversing death sentence). Rather, the record firmly establishes counsel's diligent preparation and good-faith efforts at representation, and appellant's post-conviction presentation of additional or different theories of mitigation does not present facts sufficient to show that his counsel were ineffective."State v. Conway, 10th Dist. No. 05AP-76, 2005-Ohio-6377
at ¶ 44.
 {¶ 134} In the case at bar, appellant failed to demonstrate a reasonable probability that, but for his counsel's failure to employ a different mitigation specialist, the mitigating factors would have been assigned such weight as to compel the conclusion that the aggravating factors did not outweigh the mitigating factors. State v. *Page 35 Keith (1997), 79 Ohio St.3d 514, 530, 684 N.E.2d 47, certiorari denied (1998), 523 U.S. 1063, 118 S.Ct. 1393, 140 L.Ed.2d 652.
 {¶ 135} Appellant's twelfth ground for relief is denied.
 THIRTEENTH GROUND FOR RELIEF {¶ 136} In the thirteenth ground for relief, the petition merely claimed that the appellant is "actually innocent."
 {¶ 137} In State v. Harrington, the Fourth District Court of Appeals noted,
 {¶ 138} "As already noted, post conviction relief is available only to correct errors of constitutional magnitude that occurred at the time the accused was convicted. Ohio courts have been consistent in holding that a claim of actual innocence is not itself a constitutional claim, nor does it establish a substantive ground for post conviction relief.State v. Nash, Cuyahoga App. No. 87635, 2006-Ohio-5925, 2006 WL 3234017, ¶ 14;State v. Watson (1998), 126 Ohio App.3d 316, 323, 710 N.E.2d 340. The court in Watson cited the Supreme Court of the United States inHerrera v. Collins (1993), 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203, which concluded that a claim of actual innocence based upon newly discovered evidence did not state a basis for federal habeas corpus relief absent the occurrence of an independent constitutional violation at trial. See Herrera, 506 U.S. at 400, 113 S.Ct. 853, 122 L.Ed.2d 203. We have reviewed Herrera and its rationale, i.e., the availability of other remedies to pursue innocence, the presumption of innocence afforded an accused before trial, the myriad constitutional provisions designed to protect against the risk of convicting an innocent person, and the propriety of losing many of those protections upon being convicted by due process of law. We agree with the United States Supreme Court's conclusion that the purpose of *Page 36 
collateral review is not factual error correction. We also conclude that application of these principles to state post conviction proceedings is appropriate." 172 Ohio App.3d 595, 876 N.E.2d 626, 2007-Ohio-3796
at ¶ 18. See, also State v. Nelson, Muskingum App. No. CT2008-0013,2008-Ohio-5901 (Noting ""actual innocence" claims are now allowable under the statute, but such claims are restricted to certain cases in which DNA testing has been duly performed. This does not apply to the present case.")
 {¶ 139} The only evidence submitted in support of appellant's claim of actual innocence was his own affidavit and the affidavit of his family members.
 {¶ 140} "In determining how to assess the credibility of supporting affidavits in post conviction relief proceedings, the Supreme Court adopted the reasoning of the First Appellate District in State v.Moore (1994), 99 Ohio App.3d 748, 651 N.E.2d 1319, which had looked to federal habeas corpus decisions for guidance. Id. at 753-754,651 N.E.2d at 1322-1323. The Supreme Court ultimately determined that the trial court should consider all relevant factors in assessing the credibility of affidavit testimony in `so-called paper hearings,' including the following: `(1) whether the judge viewing the post conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.' Calhoun, *Page 37 86 Ohio St.3d at 285, 714 N.E.2d at 911-912, citing Moore,99 Ohio App.3d at 754-756, 651 N.E.2d at 1323-1324." State v. Kinley (1999),136 Ohio App.3d 1, 13-14, 735 N.E.2d 921, 930-31.
 {¶ 141} As "self-serving" affidavits, the trial court could give them little or no weight. State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E.2d 905; State v. Kapper (1983), 5 Ohio St.3d 36, 38,448 N.E.2d 823 (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect would not, because the former are not self-serving declarations).
 {¶ 142} "Since the United States Supreme Court has not recognized actual innocence as a constitutional right, we also refuse to judicially create such a constitutional right. The trial court did not err in dismissing appellant's claim of actual innocence because his claim fails to raise `a denial or infringement of [appellant's] rights under the Ohio Constitution or the Constitution of the United States' as required by R.C. 2953.21." State v. Watson (Feb. 17, 1998), 126 Ohio App.3d 316,323, 710 N.E.2d 340, 345.
 {¶ 143} Appellant's thirteenth ground for relief is denied.
 FOURTEENTH GROUND FOR RELIEF {¶ 144} In his fourteenth ground for relief, appellant raises various instances of alleged ineffectiveness of counsel, but none of these has merit. As discussed in other propositions, counsel were not ineffective by failing to raise a challenge to the jury pool based upon under-representation of African-Americans on juries in Licking County (Ninth Ground for Relief), failing to move for a change of venue (Tenth Ground for *Page 38 
Relief), or by failing to object to the introduction of tapes without playing them in court (Eighth Ground for Relief).
 {¶ 145} Based on the foregoing, we overrule appellant's fourteenth ground for relief.
 FIFTEENTH GROUND FOR RELIEF {¶ 146} In his fifteenth ground for relief, the appellant claimed that his convictions and sentences are void or voidable because trial counsel failed to call Damien Turner as a defense witness.
 {¶ 147} An attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., State v. Coulter (1992),75 Ohio App.3d 219.
 {¶ 148} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland,466 U.S., at 690, 104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelman v.Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 149} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial *Page 39 
strategy was questionable. State v. Clayton (1980), 62 Ohio St.2d 45,49, 16 O.O.3d 35, 402 N.E.2d 1189." State v. Myers (2002),97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 150} Only appellant's self-serving affidavit purporting to relate a conversation he had with Mr. Turner while in the Licking County jail was submitted in support of this claim for relief. As this affidavit contains or relies upon hearsay, the trial court could give it little or no weight. State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E.2d 905; State v. Elmore, 5th Dist. No. 2005-CA-32,2005-Ohio-5740 at ¶ 109. Further, the evidence against appellant was overwhelming. See, State v. Davis, supra, 116 Ohio St.3d 404,880 N.E.2d 31, 2008-Ohio-2 at ¶ 123.
 {¶ 151} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief.
 {¶ 152} Appellant's fifteenth ground for relief is denied.
 SIXTEENTH GROUND FOR RELIEF {¶ 153} In his sixteenth, and final, ground for relief, the appellant claimed that his convictions and sentences are void or voidable because his trial counsel failed to adequately address the state's DNA evidence.
 {¶ 154} In addressing this conflicting testimony from the post-conviction relief proceeding, it is well-established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, 39 Ohio Op.2d 366, paragraph one of the syllabus. As this court has recognized, "[a]n appellate court abuses its discretion when it substitutes its judgment for that of the trier of fact as to the credibility of witnesses." *Page 40 State v. Kerr (Nov. 1, 1996), Montgomery App. No. 15648, unreported, citing State v. Walker (1978), 55 Ohio St.2d 208, 378 N.E.2d 1049,9 Ohio Op.3d 152. Thus, in the instant case, the trial court had the ultimate responsibility of determining the weight of the evidence and the credibility of the affidavits.
 {¶ 155} In his direct appeal, the Ohio Supreme Court noted, "defense counsel did request funds for a private investigator, a mitigation specialist, a DNA expert, and a defense psychologist. The trial court granted each of these requests." 2008-Ohio-2 at ¶ 342. "Thus, the defense counsel's decision to rely on cross-examination should be viewed as a legitimate `tactical decision' particularly since the results of a DNA examination may not necessarily have proven favorable for the defense. See State v. Watson (1991), 61 Ohio St.3d 1, 13, 572 N.E.2d 97,108." State v. Hartman, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150, 1177,2001-Ohio-1580.
 {¶ 156} The affidavit submitted is that of Gregory W. Meyers, an attorney with the Ohio Public Defender Office. The Ohio Public Defender Office is representing appellant on the instant appeal. Attorney Meyers is neither a biochemist nor a statistician. Indeed, Attorney Meyers notes that he "consulted" with three such experts in preparation for rendering his opinion, however, the opinions expressed in the affidavit are not those of the expert witnesses. (Exhibit X at ¶ 9). Appellant presented no affidavit from an expert in the field of DNA to support any of the various theories or "opinions" in Attorney Meyers' affidavit.
 {¶ 157} To the extent that the trial court could find that this affidavit contains or relies upon hearsay, the trial court could give it little or no weight. State v. Calhoun *Page 41 
(1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905; State v. Elmore, 5th Dist. No. 2005-CA-32, 2005-Ohio-5740 at ¶ 109.
 {¶ 158} As the affidavit does not present evidence demonstrating the probable testimony of any expert in the field of DNA testing, it is entitled to little or no weight. Nothing in the affidavit suggests that the experts for the state would have answered any question in a different manner if cross-examined in the method suggest by Attorney Meyers. In fact the witness was quite unequivocal in her testimony that based on her training and experience only identical twins have the exact same DNA. (7T. at 1712-1715; 1757; 1762-1763).
 {¶ 159} In the case at bar Ramen Tejwani who conducted the DNA analysis for the Columbus Police crime lab has a Master degree in biochemistry and a Ph. D. in physiological chemistry. (6T. at 1659). He has been qualified as an expert witness in 35 to 40 cases. (Id. at 1660). Meghan Clement the technical director for forensic identity testing at Laboratory Corporation of America Holdings, Inc. ("LabCorp") has testified in approximately 285 cases in at least 28 states concerning DNA analysis. (7T. at 1700). Attorney Meyers, on the other hand, does not hold any degrees in science, or mathematics nor has he ever been qualified as an expert witness in the field of DNA analysis. As Attorney Meyers himself notes "To be qualified to render an expert opinion in the field of DNA, courts uniformly require the witness to have credentials in the area of science involving biochemistry." (Exhibit X at ¶ 15).
 {¶ 160} Appellant did not proffer or present anything of evidentiary quality to challenge the reliability of the FBI database or the method of arriving at the statistical conclusion. See, e.g. State v. Isley
(1997), 262 Kan. 281, 936 P.2d 275; Watts v. State *Page 42 
(Miss. 1999), 733 So.2d 214 at ¶ 28-31. Nothing in his affidavit provides any foundation or basis for the premises advanced. In light of the qualifications of the state's expert witnesses and the lack of any DNA expert supporting or testifying to support the hypotheses set forth by Attorney Meyers, the trial court could give the affidavit little or no weight.
 {¶ 161} Additionally, some courts have found that, "Attorney's affidavits explaining prevailing norms do not constitute evidencedehors the record and are akin to a notarized legal argument." State v.Hill (Nov. 21, 1997), Hamilton App. No. C-961052.
 {¶ 162} It would seem that in most cases a more objective standard than simply a countervailing opinion of another attorney is a more appropriate standard by which to determine whether counsel's performance fell "below an objective standard of reasonableness," "under prevailing professional norms." Strickland v. Washington, 466 U.S. at 688,104 S.Ct. 2052.
 {¶ 163} The United States Supreme Court has suggested that the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases provide the "guiding rules and standards to be used in defining the `prevailing professional norms' in ineffective assistance cases." Rompilla v. Beard(2005), 545 U.S. 374, 387, 125 S.Ct. 2456;Wiggins v. Smith(2003), 539 U.S. 510, 524-525, 123 S.Ct. 2527,2536-2537; Van Hook v. Anderson(6th Cir. 2008), 535 F.3d 458, 462.
 {¶ 164} Nothing in Attorney Meyers' affidavit suggests appellant's trial counsel violated any objectively established standards or guidelines, such as the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases. *Page 43 
 {¶ 165} Further, nothing in the affidavit suggests that Roland Davis can be conclusively excluded as a possible source of the DNA found inside the victim's apartment. In the same vein nothing within the affidavit submitted by Attorney Meyers suggests that it can be conclusively established that the DNA found inside the victim's apartment matches the DNA of appellant's deceased brother and no one else.
 {¶ 166} Accordingly, we find that the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 167} Appellant's sixteenth ground for relief is denied.
 {¶ 168} Accordingly, appellant's first and third assignments of error are denied.
 {¶ 169} For all the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
 Gwin, P.J., Farmer, J., and Delaney, J., concur *Page 44 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed. Costs to appellant. *Page 1